UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JOHN WILSON,<br><br>Plaintiff,<br><br>v.<br><br>DELANO STATE PRISON, et al.,<br><br>Defendants. | Case No. 1:21-cv-01651-KES-CDB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT CONCERNING EXHAUSTION PENDING HEARING**<br><br>(Doc. 37)<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Christopher John Wilson is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's Eighth Amendment excessive force claims against Defendants Sharps and Ward. (*See* Doc. 30.)[1]

**I.    INTRODUCTION**

Following service of process, Defendants Sharps and Ward filed a motion for leave to file a pre-answer motion for summary judgment on the grounds that Plaintiff failed to exhaust administrative remedies. (Doc. 32.) On October 5, 2023, the Court issued its Order Granting Ex Parte Motion For Leave To File Early Motion For Summary Judgment And To Extend Time To

---

[1] North Kern State Prison, its warden, and the California Department of Corrections and Rehabilitation were dismissed as parties on August 28, 2023. *Id.*

1  Respond To Complaint. (Doc. 33.)

2  On October 13, 2023, Plaintiff filed a document titled "Motion No Rule on Summary of Judgement - To Dismiss Motion on Administrative Remedies and Extension." (Doc. 34.) The Court issued an order denying Plaintiff's motion as premature on October 17, 2023. (Doc. 36.)

Defendants filed their motion for summary judgment alleging a failure to exhaust administrative remedies on November 16, 2023. (Doc. 37.)

When more than 30 days passed without the filing of an opposition or statement of non-opposition by Plaintiff, the Court issued its Order To Show Cause ("OSC") In Writing Why Action Should Not Be Dismissed For Failure To Obey Court Orders on December 22, 2023, noting the Court previously had ordered Plaintiff to file either an opposition or statement of non-opposition within 30 days. (Doc. 42 at 1) (citing Doc. 33 at 2.)

On December 28, 2023,[2] Plaintiff filed his opposition to Defendants' summary judgment motion. (Doc. 43.) Plaintiff filed a response to the OSC on January 5, 2024. (Doc. 45.)

On January 11, 2024, Defendants filed their reply to Plaintiff's opposition. (Doc. 46.)

## II.  SUMMARY OF FACTS

### A. The Allegations in Plaintiff's Complaint

Briefly stated, Plaintiff contends that in March 2021, while he was incarcerated at North Kern State Prison ("NKSP"), Plaintiff was assaulted by a correctional officer ("CO") while handcuffed behind his back. (Doc. 1 at 4.) According to Plaintiff, CO Sharps aggressively slapped Plaintiff across his forehead, while CO Ward held Plaintiff by his handcuffs for the assault by Sharps. (*Id*. at 4-5.) Plaintiff alleges Ward then grabbed the cuffs and Plaintiff's shoulder, turned Plaintiff towards a building, and slammed Plaintiff's face into the cement wall two or three times. (*Id*. at 5.) Plaintiff contends his face was bloodied until he could barely see. (*Id.*) Plaintiff states he has permanent scars on his forehead area, has suffered trauma and fears for his life. (*Id*. at 4-5, 15.)

///

---

[2] The document was signed and dated December 19, 2023.

2

**B. Defendants' Statement of Undisputed Facts**

Defendants submit the following separate statement of undisputed material facts:

1. Under California Code of Regulations Title 15, § 3480 et seq., which governs the grievance and appeal process, inmates at North Kern State Prison (NKSP) may appeal any adverse decision, action, or omission by the California Department of Corrections and Rehabilitation (CDCR or Department) or any CDCR staff member.

2. If an inmate filed a grievance between June 1, 2020, and January 1, 2022, the inmate was required to follow the procedures set forth in California Code of Regulations Title 15, §§ 3480–3487.

3. Beginning on June 1, 2020, the administrative grievance process consists of two levels of review: (1) the Office of Grievances (OOG) at the institution level, and (2) the Office of Appeals (OOA) in Sacramento, California.

4. The NKSP OOG receives all inmate grievances, which are also known as appeals or CDCR Form 602s, submitted by inmates at the institutional level, or first level, of review.

5. Inmates were also permitted to submit a written appeal disputing the decision from the OOG to the OOA.

6. In May of 2021, and until 2022, an inmate was required to submit a grievance to OOG at their institution within 30 calendar days from the date of event upon first having knowledge of an adverse policy, decision, action, condition, or omission by CDCR or CDCR staff.

7. When an inmate grievance is received by the OOG at the institution, it is date-stamped and screened to determine whether it would be accepted and assigned for review.

8. An inmate grievance will be rejected by the OOG if it was submitted beyond the required 30 calendar day timeframe. An inmate grievance will also be rejected by the OOG if it concerns harm to a person other than the inmate who signed the grievance.

9. Completion of the review process by the OOG resulting in a decision of rejection does not exhaust administrative remedies.

3

10. Plaintiff Christopher John Wilson filed his complaint on November 15, 2021, alleging that, while incarcerated at NKSP, he was assaulted in the month of March 2021 by Defendants Sharp and Ward (Defendants). In screening Plaintiff's complaint, the Court found that Plaintiff failed to state a claim against the Warden, NKSP, or CDCR. Rather than amending his complaint, Plaintiff elected to proceed on his complaint as screened, against Defendants Sharp and Ward for an alleged use of force in violation of the Eighth Amendment.

11. Plaintiff claims he was slapped across the forehead by Defendant Sharp after being handcuffed and held up by Defendant Ward. Then, Plaintiff alleges that Defendant Ward grabbed Plaintiff and slammed Plaintiff into a wall causing a head injury and bleeding.

12. Plaintiff checked the boxes on his First Amended Complaint (FAC), which agreed with the Court's screening order, acknowledging his awareness of the grievance procedure, and the need to exhaust the grievance procedure.

13. Plaintiff submitted grievance log number 000000126838 (grievance) to OOG at NKSP on May 31, 2021, which contained two claims. Claim 001 stated that Plaintiff was assaulted by Defendants after asking Defendants to be moved from his cell. Claim 002 was unrelated to Plaintiff's allegations because this claim concerned alleged misconduct towards other inmates.

14. NKSP OOG marked that the grievance was received on June 9, 2021. On June 10, 2021, NKSP OOG issued a rejection decision for both claims. Claim 001 was rejected as untimely pursuant to Section 3487(a)(1) because the date Plaintiff discovered the action was allegedly March 16, 2021, and Plaintiff should have submitted his grievance on, or by, April 15, 2021, to meet the 30-day requirement in Section 3482(b). NKSP OOG also issued a rejection decision for claim 002, pursuant to Section 3487(a)(4), because the grievance concerned alleged harm to another inmate.

15. Plaintiff appealed the NKSP OOG decision regarding grievance log number 000000126838 in appeal log number 126838, which was received by the OOA on July

2, 2021.

16. On July 2, 2021, the OOA had sixty calendar days to complete a written response to Plaintiff's appeal. However, in a letter dated September 1, 2021, the OOA acknowledged that the time period to respond to Plaintiff expired before the OOA was able to respond. Thus, pursuant to Section 3486(m), the decision by the NKSP OOG rejecting the appeal served as the Department's final response to Plaintiff's allegation of excessive force.

17. While completion of the review process by the OOA generally results in exhaustion of all administrative remedies, a claim is not exhausted if it was rejected pursuant to Section 3487(a).

18. The NKSP OOG decision served as the Department's final response because the OOA time-expired decision did not substantively address Plaintiff's grievance. Since the NKSP OOG decision served as the Department's final response, and NKSP OOG's final response was a rejection decision, pursuant to Section 3487(a)(1), Plaintiff failed to exhaust available administrative remedies.

19. Additionally, a review of the NKSP OOG records indicates that Plaintiff was able to submit the additional following four grievances to NKSP from March 16, 2021, through June 9, 2021: (1) grievance log number 000000105908 marked received by NKSP OOG on April 6, 2021, and approved by NKSP OOG on April 26, 2021; (2) grievance log number 000000106559 marked received by NKSP OOG on April 8, 2021, and disapproved on April 26, 2021; (3) grievance log 000000107491 marked received by NKSP OOG on April 12, 2021, and redirected by NKSP OOG on April 12, 2021; and (4) grievance log number 000000117234 marked received by NKSP OOG on May 11, 2021, and on June 8, 2021, NKSP OOG approved claim 001 and rejected claim 002. None of these four grievances reference allegations that Defendants excessive force. However, these grievances do demonstrate that Plaintiff was able to submit grievances during this time period and also that he knew how to access and use available grievance procedures.

5

20. Moreover, from March 16, 2021, through July 2, 2021, only one additional appeal, appeal log number 105908, was received by the OOA from Plaintiff on May 24, 2021. Appeal log number 105908 was an appeal of grievance log number 000000105908. OOA denied Plaintiff's appeal log number 105908 on June 24, 2021. Plaintiff filed no appeals from March 16, 2021, through July 2, 2021, except appeal log numbers: (1) 105908 and (2) 126838.

21. NKSP OOG also conducted a review of the Bed Movement History of Plaintiff. NKSP OOG provided that Plaintiff was housed in: (1) Facility B-2 at NKSP from March 16, 2021, to April 1, 2021; (2) Facility D-1 at NKSP from April 1, 2021, to April 5, 2021; and (3) Facility D-4 at NKSP from April 5, 2021, to May 26, 2021.

22. A review of NKSP OOG records from March 1, 2021, through May 31, 2021, indicates that inmates from the same housing units as Plaintiff, during the same time periods, were able to file grievances. This demonstrates that there was an accessible lock box, which boxes are permanently affixed to a wall or podium in the housing units, for Plaintiff to submit grievances, and that other inmates were able to submit grievances during this time period.

(Doc. 37-1 [hereafter "UDF"].)

### III. LEGAL STANDARDS

#### A. Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is an affirmative defense, which the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy and (2) that the plaintiff failed to exhaust that remedy. *Albino*, 747 F.3d at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). "However, … the ultimate burden of proof remains with the defendant." *Id.*

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by *Albino*, 747 F.3d at 1168-69. "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court finds that remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

### C.  CDCR Grievance Process

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission by the department or staff if it has an adverse effect on prisoner health, safety, or welfare. Cal. Code Regs. tit. 15, §3480, *et seq*. Compliance with 42 U.S.C. § 1997e(a) requires

8

California-state prisoners to utilize CDCR's grievance process to exhaust their claims prior to filing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see also Woodford*, 548 U.S. at 85-86. Administrative appeals are generally subject to two levels of review before the remedy is deemed exhausted. Cal. Code Regs. tit. 15, §§ 3481(a)-(b), 3485(a)-(b)); s*ee Sapp*, 623 F.3d at 818.

### IV.     EVIDENTIARY MATTERS

Plaintiff has failed to properly respond to Defendants' Statement of Undisputed Facts in support of the motion for summary judgment. Plaintiff was served with a *Rand* warning that included the following language:

> In accordance with Local Rule 260(a), Defendants have filed a Statement of Undisputed Facts that contains discrete, specific materials facts to support their entitlement to summary judgment. In response to this Statement, Local Rule 260(b) requires you to "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." You may also "file a concise Statement of Disputed Facts, and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication." *Id*.

(Doc. 37-14 at 2.)

Plaintiff neither reproduced Defendants' itemized facts, nor admitted or denied those facts. (*See* Doc. 43.) Nor did Plaintiff file a concise statement of disputed facts. (*Id*.) Because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to have admitted those facts. *See, e.g*., *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement."); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020) (deeming defendants undisputed facts as admitted after plaintiff failed to comply with Local Rule 260(b)). Nevertheless, where Plaintiff's verified complaint or evidence submitted in support of his opposition to Defendants' motion for summary judgment bring Defendants' proffered facts into dispute, the Court considers the complaint and any evidence. *Jones v. Blanas,* 393 F.3d 918, 923

(9th Cir. 2004) (court is to consider evidence submitted by pro se prisoner in opposition to summary judgment only to the extent it is based on personal knowledge and "attested [to] under penalty of perjury" as true and correct)).

## V.     DISCUSSION

The question before the Court is whether Plaintiff exhausted his administrative remedies concerning his Eighth Amendment claims against Defendants Sharps and Ward.

<u>Grievance Log No. 126838[3]</u>

Grievance Log No. 126838 was submitted on May 31, 2021, and received by the institution on June 9, 2021. (UDF ¶¶ 13-14.) The grievance presented two claims: one asserting Plaintiff was assaulted by Sharps and Ward after asking to be moved, and the second being unrelated to the first because it concerned alleged misconduct toward other inmates. (UDF ¶ 13.) NKSP rejected the grievance on June 10, 2021. (UDF ¶ 14.) Claim one was rejected as untimely pursuant to Title 15 of the California Code of Regulations[4] section 3487(a)(1) because the grievance should have been submitted on or before April 15, 2021, but was not submitted until May 31, 2021. (UDF ¶¶ 8, 14.) Claim two was also rejected pursuant to section 3487(a)(4). (UDF ¶¶ 8, 14.) No other grievances were filed during the relevant period. (UDF ¶ 19.)

<u>Appeal Log No. 126838</u>

Plaintiff appealed the rejection of the grievance in Appeal Log No. 126838, received by the Office of Appeals on July 2, 2021. (UDF ¶ 15.) The Office of Appeals had 60 days[5] within which to complete a written response to Plaintiff's appeal. (UDF ¶ 16.) In correspondence dated September 1, 2021, that office acknowledged the relevant time period had expired and that the institutional level response served as the final response because the Office of Appeals did not substantively respond to the appeal within sixty days. (UDF ¶¶ 16, 18.) Generally, such a response results in the exhaustion of administrative remedies; however, exhaustion does not occur

---

[3] The Court elects to omit the six zeros preceding the grievance or appeal log numbers for ease of reference.

[4] All future references are to the Title 15 of the California Code of Regulations unless otherwise indicated.

[5] Or until August 31, 2021.

where a grievance was rejected as untimely pursuant to section 3487(a). (UDF ¶ 17.) Thus, because Grievance Log No. 126838 was rejected as untimely under that same section, the claim involving Defendants Sharps and Ward is not exhausted. (UDF ¶ 18.) No other appeals were filed during the relevant period. (UDF ¶ 20.)

The undersigned finds Defendants have met their initial burden of showing there is no genuine issue of material of fact because there exists an available administrative remedy and Plaintiff failed to exhaust his administrative remedies. (*See* UDF ¶¶ 1, 3-6, 13-18.) *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387; *Albino,* 747 F.3d at 1172. More specifically, Defendants have shown that an available remedy exists, that Grievance Log No. 126838 was rejected as untimely, that Appeal Log No 126838 adopted the institutional level untimeliness determination, and that a grievance rejected for untimeliness is not considered exhausted. Thus, Defendants have met their initial burden to show Plaintiff's claims against Defendants Sharp and Ward are not exhausted and are subject to dismissal.

Therefore, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

In his opposition,[6] Plaintiff argues he did exhaust his administrative remedies and states the "OOA does exhaust all remedies. When it reaches the Inmate Appeals at Office of Appeals Department of Corrections and Rehabilitation P.O. Box 942883 Sacramento CA 95811." (Doc. 43 at 1.) Essentially, Plaintiff contends staff misconduct allegations are not subject to time constraints. (*Id*. at 72 [Exhibit F].) He acknowledges he "did not file [Grievance Log No. 126838] promptly" and states that was "due to fear and safety exspecially [sic] when these officers Sharp and Ward targetted [sic] this petition due to my prior criminal history as a sex offender and also threatened if I file a grievance at the time of the incadent [sic] they stated wherever I go they would make sure that I will be targetted [sic] again so this petitioner waited till I was transferred

---

[6] Plaintiff argues the merits of his claims against Defendants Sharp and Ward. (*See, e.g*., Doc. 43 at 2-4, 5-7, 9-14.) The Court will not address merits-based arguments and focuses only on those assertions pertaining to the exhaustion of administrative remedies.

11

out of the reception center." (*Id*. at 1-2.) Plaintiff asserts he "was in complete fear of [his] personal safety due to" the Defendants' excessive force. (*Id*. at 4.) He states if he had filed a grievance his life would have been "more severly [sic] in danger." (*Id*.) He states they are "part of a Correctional Prison Gang called the 'Green Wall' and 'Blue Wall of Silence.'" (*Id*.) Plaintiff contends Sharps and Ward assaulted him and he witnessed assaults upon other inmates wherein Sharps and Ward "stood and watched." (*Id*.) Thus, Plaintiff was "in fear of [his] life and safety as to a retaliation." (*Id*.) Plaintiff argues he "lacked the opportunity" to submit a timely grievance following the March 2021 incident (*id*. at 15) and states he has "proven-established and such all during the court documents-proceedings as to prima facie facts, evidence, proof of facts to sufficient to establish – introducing as evidence – showing of assault by correctional officers – suffering tramaticly [sic] …" (*id* at 15-16). Plaintiff asks the Court "to proceed with this case and not deprive [him] of [his] rights under the United States Constitution to be free from any cruel and unusual punishment." (*Id*. at 17.)

Plaintiff's assertion that his grievance was not untimely because staff misconduct allegations are not subject to time constraints is incorrect. In March 2021, section 3482(b) unconditionally required a grievance be filed within thirty days of the date of the incident. (UDF ¶ 6.) Plaintiff's untimeliness in submitting his grievance could only be excused if the grievance process was effectively unavailable to him.

"[T]he threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). In *McBride*, the Court of Appeals noted:

> "To show that a threat rendered the prison grievance system unavailable, a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance. If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable. That is, there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance."

*Id.* Physical violence or explicit threats of punishment for filing a grievance can satisfy the objective prong. *Sealy v. Busichio*, 696 F. App'x 779, 780-81 (9th Cir. 2017)

In *McBride*, the plaintiff alleged that after an altercation with prison guards left him "bleeding and swelling," and the defendants "came by his cell and told him that he was 'lucky' because his injuries 'could have been much worse.'" *McBride*, 807 F.3d at 985. The Court of Appeals held that while the plaintiff's view that defendant's words were a warning against filing a complaint was subjectively legitimate, it was not objectively reasonable because the defendants made no direct reference to the grievance process in their comments. *Id*. at 988. The Court held the interaction between the guards and the plaintiff, though "hostile," did not render the grievance system unavailable. *Id*.

Here, the Court notes that in his verified complaint, Plaintiff stated: "I was in complete fear of my safety if I would have filed a grievance at the time my life would not have been protected." (Doc. 1 at 4.) Further, Plaintiff stated: "And the reason I didn't file a grievance right away is if I did the condoning and retaliation and corruptness would have put my life into more fear and danger, fear of death." (*Id*. at 5.) *Jones*, 393 F.3d at 923.

Further, Plaintiff contends in his opposition[7] that he delayed submitting Grievance Log No. 126838[8] because Defendants Sharps and Ward "threatened" that if he filed a grievance "wherever [he went] they would make sure that [he would] be [targeted] again." Liberally construed, Plaintiff's allegation that Sharps and Ward's comments that he would be targeted "wherever" he went if he filed a grievance following the March 2021 incident is sufficient to meet the first, subjective prong of the *McBride* test. *McBride*, 807 F.3d at 988.

---

[7] Plaintiff's opposition is signed under penalty of perjury. (Doc. 43 at 17.) Thus, the facts Plaintiff has set forth in opposition are evidence to be considered when deciding a motion for summary judgment. *See Jones*, 393 F.3d at 923; *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

[8] In Grievance Appeal Log No. 126838 and Appeal Log No. 126838, Plaintiff wrote: "Didn't file this while in Northern Kern State Prison due to fear, safety, [retaliation] by all staff members of CDC also filing a 1983 civil complaint by a prisoner." (*See* Doc. 37-5 at 2 & Doc. 37-12 at 2.). And, in the lengthy statement attached in support of his grievance and appeal, Plaintiff states: "Correctional Officers Mr. Sharps and Mr. Z Ward Defendants did in fact make specific and direct threats with excessive force to cause great bodily injury …." (Doc. 37-5 at 6 & Doc. 37-12 at 6.) To be clear, the Court did not consider, for any purpose, Plaintiff's numerous references to other purported assaults against other inmates in his grievance.

Next, liberally construing Plaintiff's verified opposition, the Court finds Plaintiff has demonstrated his belief was objectively reasonable and thus meets the second, objective prong of the test. *Id*. This is so because Plaintiff's assertions are more than general hostilities. *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 794 (9th Cir. 2018) (allegations of "general and unsubstantiated fears about possible retaliation" insufficient to satisfy inmate's burden to produce evidence of something in the particular case that rendered administrative remedies effectively unavailable). Given the alleged threat by Sharps and Ward—that if Plaintiff filed a grievance, he would be targeted wherever he went—there is a basis in this record to conclude that a reasonable prisoner of ordinary firmness would have believed the Defendants' actions communicated a threat not to use NKSP's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance. Unlike *McBride*, the statements allegedly made by Sharps and Ward specifically reference Plaintiff's use of the prison grievance process and raise the specter of future attacks. *See, e.g.*, *DeArmitt v. Clackamas County*, No. 3:16-cv-00583-YY, 2019 WL 1497042, at *4 (D. Or. Jan. 18, 2019) (recommendations finding genuine issue of material fact regarding defendant's threat— "If you want to start filing grievances, I'll make sure your time here is living hell. And that goes for any time you come back also"—where plaintiff's statements that he feared for his safety and did not file a grievance right away constituted evidence he believed defendant would retaliate against him, citing *McBride*), adopted at 2019 WL 1497028 (D. Or. Apr. 4, 2019); *Miramontes v. Gower*, No. 2:15-cv-1544 CKD P, 2016 WL 4001211, at *2 (E.D. Cal. July 25, 2016) (finding genuine issue of material fact as to whether plaintiff was actually threatened with retaliation for further use of inmate grievance process and whether that actually stopped him from filing a grievance where defendant told plaintiff "he did not 'tolerate' accusations made against other correctional officers via the inmate grievance process at CCC," asked plaintiff if he knew "'what happens to snitches in prison'" and told him "'maybe I should move you to Lassen…for your own safety'").

The Court acknowledges the fact Plaintiff filed four grievances and an appeal following the incident giving rise to this litigation. (UDF ¶¶ 19-20; Docs. 37-4 & 37-8 thru 37-11; *see* Doc. 37-3 [Grievance and Appeal History].) However, a review of those documents reveals they

concerned matters unrelated to any staff misconduct complaint. Rather, those grievances and appeal were directed to a correctional counselor concerning sentencing enhancements and the applicability of Proposition 57 to Plaintiff's underlying conviction and sentence, concerned property allegedly lost during a building move, and concerned issues related to law library access directed to the "Records Department" and "Administration." (*See* Doc. 37-2 at ¶ 9; Docs. 37-8 through 37-11.)[9] Thus, the Court finds the four grievances and one appeal allegedly filed after the March 16, 2021 incident were not likely to draw outside attention to Plaintiff's complaints involving Sharps and Ward. *See Kaba v. Stepp*, 458 F.3d 678, 684-86 (7th Cir. 2006) (the fact that a prisoner filed other appeals when he alleges fear of retaliation if he pursued the subject appeal is not, ipso facto, dispositive whether the grievance system was effectively available on the subject grievance). Accord *Rinaldi v. United States*, 904 F.3d 257, 269-70 (3d Cir. 2018) ("Rinaldi's willingness to file grievances concerning unrelated and far less inflammatory subjects like cleaning supplies is hardly dispositive of whether he was subjectively deterred from pursuing his Retaliation Request at the Institution") (relying on *Kaba*); *cf. Arocha v. Sauceda*, No. 1:11-cv-2959 LKK KJN P, 2013 WL 6782842, at *6 (E.D. Cal. Dec. 19, 2013) (finding plaintiff's threats of retaliation undermined by his filing seventeen grievances during relevant period, several of which involved named defendants and allegations of sexual assault).

Here too, Defendants' exhibits indicate that when Plaintiff submitted Grievance Log No. 126838 on May 31, 2021, he was housed at the Substance Abuse Treatment Facility, not NKSP. (*See* Doc. 37-7 at 3; Doc. 37-12 at 2, 15-16; Doc. 37-13 [as of 5/26/21, housed at SATF].) Hence, Plaintiff's contention that he did not file a grievance concerning the incident in March 2021 while he was housed at NKSP due to threats and a fear for his safety is supported by this record.

The Court is not persuaded by Defendants' arguments in reply to Plaintiff's opposition. In particular, the Court finds Defendants' reliance on *Crane v. Rodriguez*, No. 2:15-cv-0208 TLN KJN P, 2023 WL 113773 (E.D. Cal. Jan. 5, 2023) to be misplaced. (*See* Doc. 46 at 3-4.) There, the plaintiff asserted defendants had conspired, between December 31, 2009, and March 1, 2013,

---

[9] Although two of the submissions were received after the March 16, 2021 incident, those submissions are neither dated nor signed by Plaintiff. (*See* Docs. 37-9 & 37-10.)

to set plaintiff up for assault by other inmates in retaliation for his litigation activities. *Id.* at *2. Crane also alleged in his second amended complaint that certain other defendants used excessive force on March 1, 2013. *Id*. In considering whether plaintiff exhausted his claims arising out of a January 16, 2013, assault based upon a fear of retaliation, the Court found plaintiff pursued several other appeals, including appeals regarding incidents at issue in the plaintiff's complaint. The *Crane* Court found that "Plaintiff's filing of the motions for injunctive relief and submission of the grievances discussed above undermine plaintiff's claim that he actually believed prison officials would retaliate against him for filing a grievance regarding the January 16, 2013 incident." *Id.* at *10 (record citations omitted). Here, unlike *Crane*, none of Plaintiff's later grievances involved allegations relating to Plaintiff's claims here. Nor do there exist other motions filed by Plaintiff that undermine his retaliation defense and the question of exhaustion. *See Kaba*, 458 F.3d at 685 ("The ability to take advantage of administrative grievances is not an 'either-or' proposition. Sometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics.").

Lastly, and briefly, any argument by Plaintiff concerning a lack of "boxes" in which to submit grievances at NKSP as it concerns any claim to unavailability is without merit. Plaintiff failed to meet his burden in that regard. *See Celotex*, 477 U.S. at 322. (*See also* UDF ¶ 22.)

In sum, considering all evidence, including the verified complaint and opposition submitted by Plaintiff, the types of grievances filed by Plaintiff subsequent to the March 2021 incident involving Sharps and Ward, the statements attributed to Sharps and Ward by Plaintiff in Grievance Log No. 126838, and the fact Plaintiff only submitted his grievance after he had been transferred from NKSP to another facility, the Court finds Defendants have not met their burden of proof regarding the exhaustion of administrative remedies and will recommend their motion for summary judgment be denied. *Fordley v. Lizarraga*, 18 F.4th 344, 350-51 (9th Cir. 2021) ("Because the failure to exhaust is an affirmative defense that defendants must plead and prove, the ultimate burden ... remains with the defendants").

### V.   *ALBINO* HEARING

Because the undersigned finds Defendants have not met their ultimate burden to prove that Plaintiff failed to exhaust his administrative remedies and will recommend Defendants' motion for summary judgment be denied, an evidentiary hearing is warranted. The Court finds it must resolve: (1) whether Defendants Sharps and Ward verbally threatened Plaintiff that if he were to file a grievance concerning the incident in March 2021 that he would be targeted; (2) whether the alleged threat was the cause of Plaintiff's delay in submitting Grievance Log No. 126838; and (3) whether the alleged threat would have deterred a reasonable inmate of ordinary firmness and fortitude from filing a grievance. Such disputed fact are material as to whether such actions, if they occurred, rendered administrative remedies unavailable to Plaintiff. Accordingly, an evidentiary hearing to address these issues is appropriate. *See Albino*, 747 F.3d at 1170-71 (court shall hold evidentiary hearing to decide disputed factual questions relevant to administrative exhaustion).

### VI.   CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Defendants' motion for summary judgment for a failure to exhaust administrative remedies (Doc. 37) be **DENIED**, subject to an evidentiary hearing.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 27, 2024**

UNITED STATES MAGISTRATE JUDGE